**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

ANDREW JERMAINE BETHEA,

      *Defendant-Appellant.*

No. 09-4333

Appeal from the United States District Court
for the District of South Carolina, at Florence.
R. Bryan Harwell, District Judge.
(4:08-cr-00872-RBH-1)

Argued: March 25, 2010

Decided: April 27, 2010

Before TRAXLER, Chief Judge, and GREGORY and
SHEDD, Circuit Judges.

Vacated and remanded by published opinion. Judge Gregory
wrote the opinion, in which Chief Judge Traxler and Judge
Shedd joined.

## COUNSEL

**ARGUED**: Michael A. Meetze, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Florence, South Carolina, for Appel-
lant. Carrie Ann Fisher, OFFICE OF THE UNITED STATES

ATTORNEY, Florence, South Carolina, for Appellee. **ON BRIEF:** W. Walter Wilkins, United States Attorney, Columbia, South Carolina, Rose Mary Parham, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

South Carolina makes it a crime "to escape," and broadly defines the term to include both unlawfully leaving and failing to report to custody. S.C. Code Ann. § 24-13-410(A) (2009). We consider two questions regarding the relationship between this statute and the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (2006), in this appeal: First, whether a conviction under the state's escape statute necessarily constitutes a "violent felony" under the ACCA. And second, if it does not, whether this defendant's conviction necessarily involves the type of violent conduct contemplated by the ACCA.

In light of the Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687 (2009), we hold that a conviction under South Carolina's escape statute does not inherently constitute a violent felony. Further, because we cannot determine whether the defendant's conduct here necessarily violated the statute in a way that would bring him under the ACCA's ambit, we vacate his sentence and remand to the district court for proceedings consistent with this opinion.

I.

The defendant, Andrew Jermaine Bethea ("Bethea"), challenges his 180-month prison sentence, imposed after he pled guilty to being a felon in possession of a firearm, in violation

of 18 U.S.C. § 922(g)(1). The district court enhanced Bethea's sentence after determining that he had three prior ACCA-predicate convictions.

Under the ACCA, a defendant who is convicted of being a felon in possession of a firearm and who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a fifteen-year mandatory minimum prison sentence. § 924(e)(1). The ACCA defines a "violent felony" as a "crime punishable by imprisonment for a term exceeding one year" that either

    (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii)    is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B).

Before the district court, Bethea did not dispute that two of his prior convictions were ACCA-predicate offenses; however, he argued that his conviction for violating South Carolina's escape statute was not. The district court disagreed, finding that Bethea's conviction was a violent felony within the meaning contemplated by the ACCA. Though it apparently agreed that escape, as defined by South Carolina, is not a categorically violent crime, it found that Bethea violated the statute in a way that would constitute a violent crime after considering the relevant charging and judicial documents. It therefore enhanced Bethea's sentence in accordance with the ACCA. Bethea timely appealed.

## II.

### a.

When deciding whether an offense constitutes a violent felony under the ACCA, the Supreme Court has made clear that our first step is to determine which of two, potentially applicable interpretive methods applies to the challenged statute. First, we are to consider whether the statute proscribes conduct that "as generally committed" includes an element of violence. *Chambers*, 129 S. Ct. at 690; *Taylor v. United States*, 495 U.S. 575, 598 (1990). Under this categorical approach, the way in which a particular defendant violated the statute on the particular day in question is irrelevant; the only question is whether the statutory language proscribes conduct that involves violence when the offense is considered generically. *Chambers*, 129 S. Ct. at 690.

Where, however, a statute broadly criminalizes conduct that could be "generally committed" in multiple ways, some violent and some not, the categorical approach is inapplicable. *Id.*; *Taylor*, 495 U.S. at 599. Under this so-called, "modified-categorical" approach, a court is entitled to review "charging documents filed in the court of conviction, or [ ] recorded judicial acts of that court," to determine whether the defendant's crime "necessarily" constituted the type of generic conduct that would implicate the ACCA. *Shepard v. United States*, 544 U.S. 13, 20 (2005); *Taylor*, 495 U.S. at 602. And in determining whether a statute's terms are so broad as to include multiple categories of conduct, some of which would and others which would not constitute violent felonies, we look to how its elements are defined by statute and by the state's supreme court. *Johnson v. United States*, No. 08-6925, 2010 U.S. LEXIS 2201, at *8 (U.S. March 2, 2010).

### b.

Until recently, the question of which approach to apply to the escape statute before us would likely have been resolved

by Circuit precedent. In *United States v. Hairston*, 71 F.3d 115 (4th Cir. 1995), we considered a similar North Carolina escape statute and held that under the categorical approach, an escape conviction constituted a violent felony under the ACCA. *Id.* at 117.

Last term, however, the Supreme Court decided *Chambers v. United States*, which directly undermines our holding in *Hairston*, particularly where an escape statute can be violated by a defendant's failure to report to custody. Addressing an Illinois escape statute, which by its terms could be violated by a defendant's breaking out of jail or by a defendant's failing to report, the Court found that a defendant's conviction under that statute had to be considered under the modified-categorical approach. *Chambers*, 129 S. Ct. at 691. That statute, the Court reasoned, proscribed "at least two separate crimes," one of which, failure to report, was not a violent felony under the ACCA. *Id.* Where, then, a statute prohibits both failure to report and more traditional escapes, a court must use the modified-categorical approach to determine which of the two forms of conduct the defendant engaged in when determining whether his prior offense brings him within the ACCA's purview.

III.

a.

At first blush, it is unclear whether South Carolina's escape statute proscribes one or more generic forms of conduct. By its terms, the statute merely makes it a crime "for a person, lawfully confined in prison or upon the public works of a county or while in the custody of a superintendent, guard, or officer, to escape." § 24-13-410(A).[1] Unlike the Illinois statute

---

[1]Section 24-13-410(A) also makes it a felony to attempt to escape or possess tools of escape. Neither of these provisions is applicable to this appeal.

in *Chambers*, the statute here does not reduce escape to different forms of conduct, but rather makes it a crime simply "to escape." *Id.*

It is clear, however, that the term "escape" under South Carolina law broadly encompasses both traditional escape and failure to report. A separate statutory provision dealing with inmate furloughs states that "[t]he wilful failure of a prisoner to remain within the extended limits of his confinement or return within the time prescribed to the places of confinement . . . is considered an *escape* from the custody of the director punishable as provided in Section 24-13-410." S.C. Code Ann. § 24-3-210 (emphasis added). South Carolina therefore defines and treats the failure to return to custody[2] in the same way it does unlawfully leaving custody. A defendant who commits either offense is simply charged with escape under section 24-13-410.

The South Carolina Supreme Court has emphasized section 24-13-410's broad scope. In *South Carolina v. Murray*, 256 S.E.2d 543 (S.C. 1979), the defendant challenged his conviction under section 24-13-410 for failing to return to custody after a period of authorized release. *Id.* at 543. Specifically, he alleged a material variance between his indictment, which alleged that he "wilfully and unlawfully escape[d]" from custody, and the proof at trial, which showed that he merely failed to return to prison. *Id.* The state supreme court held that there was no material variance, because under South Carolina law, a person escapes from custody by failing to return; indeed, that failing to return is "the very crime" defined by the statutory term escape. *Id.* at 544.

Because it is clear that the term "to escape" broadly encompasses at least two generic classes of conduct under South

---

[2]The Supreme Court made clear in *Chambers* that for ACCA purposes, a failure to report and a failure to return to custody are considered part of the same generic course of conduct. 129 S. Ct. at 691.

Carolina law, including failure to report, *Chambers* requires us to use the modified-categorical approach to determine whether the defendant's conduct was generically violent. *See* 129 S. Ct. at 691. The district court was therefore correct to look to the charging documents to determine whether Bethea committed a violent felony.

b.

In his brief,[3] Bethea argues that in light of *Chambers*' holding that the challenged Illinois escape statute contained "at least two separate crimes," *id.*, we should further expand the range of crimes that generally constitute escape. Specifically, he urges us to find that "walk-away" escapes are a separate category of conduct, distinct from "break-out" escapes, and that the former category is insufficiently "purposeful, violent, and aggressive," *Begay v. United States*, 128 S. Ct. 1581, 1588 (2008), to be an ACCA predicate.

---

[3]At oral argument, Bethea's counsel argued, in the alternative, that we should apply the categorical approach to find that violations of the South Carolina statute are not violent felonies. We cannot do so in light of *Chambers*, in which the Supreme Court made clear that escape statutes, which include in their definitions failure to report, should be analyzed under the modified-categorical approach. 129 S. Ct. at 691.

Furthermore, we disagree with counsel's contention that our recent decision in *United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010), suggests a contrary result. In *Rivers*, we found the modified-categorical approach inapplicable to South Carolina's blue-light statute because the statute proscribed only one general course of conduct — namely failing to stop for a police signal. We emphasized that, after *Chambers*, a statute did not proscribe different forms of conduct simply because it covered both intentional and unintentional acts — the statute had to proscribe acts, which themselves, were different in-kind, regardless of the perpetrator's mens rea. Here, the South Carolina statute covers not just intentional and unintentional conduct, but rather at least two separate generic forms of conduct: unlawfully leaving and failing to return to custody, which the Supreme Court explicitly held must be analyzed separately under the ACCA. *Chambers*, 129 S. Ct. at 691.

Bethea's argument has gained significant traction in the federal appellate courts. Indeed, each circuit to consider this question in a published opinion[4] after *Chambers* has held that walk-away escape is a distinct form of generic conduct that does not constitute a violent felony under the ACCA. *See United States v. Lee*, 586 F.3d 859, 869 (11th Cir. 2009); *United States v. Hopkins*, 577 F.3d 507, 514 (3d Cir. 2009); *United States v. Hart*, 578 F.3d 674, 678 (7th Cir. 2009); *United States v. Ford*, 560 F.3d 420, 423 (6th Cir. 2009); *United States v. Charles*, 576 F.3d 1060, 1068 (10th Cir. 2009).[5] We need not wade into this discussion, however, because the South Carolina escape statute here penalizes both unlawfully leaving custody and failing to report to custody. Under *Chambers*, then, the statute must be analyzed under the modified-categorical approach, regardless of whether or not walk-away escape is a distinct form of conduct.

## IV.

Because South Carolina's escape statute includes, by definition, at least one form of conduct that is and one form of conduct that is not an ACCA predicate, we must now consider whether Bethea's charging documents and any judicial records "necessarily" show that Bethea pled guilty to generic conduct that would constitute a violent felony. *See Shepard*, 544 U.S. at 20-21. They do not.

Besides the statute, itself, the only documents relating to Bethea's escape conviction that we may consider are the indictment and the sentencing sheet. *See id.* at 15. The indict-

---

[4]The Fifth Circuit held in an unpublished decision that walk-away escape should still be treated as a violent felony after *Chambers*. *United States v. Delgado*, 320 Fed. App'x 286, 286 (5th Cir. 2009).

[5]We also note that the government does not challenge Bethea's argument that walk-away escapes are separate crimes that do not implicate the ACCA, and that it conceded this same point before at least one other court of appeals. *See Lee*, 586 F.3d at 867.

ment reads: "That Andrew Bethea did in Marlboro County on or about December 12, 1995, escape from the Marlboro County Detention Center while waiting to appear in General Sessions Court in violation of Section 24-13-410 of the 1976 Code of Laws of South Carolina." J.A. 106.[6] Bethea's sentencing sheet merely states that Bethea pled guilty to "escape." J.A. 104. The government argues, and the district court below found, that these documents prove that Bethea unlawfully left prison and did not merely fail to report.

Yet, these documents simply state that Bethea escaped, which alone makes it possible that Bethea engaged in patently non-violent conduct. Because a defendant "escapes" under South Carolina law by either breaking out or failing to report, *see Murray*, 256 S.E.2d at 544, Bethea could have failed to report to the detention center before his hearing and might not have unlawfully left physical custody. Even the indictment, which is admittedly more detailed than the sentencing sheet, would be just as legally and factually accurate were it describing an escape in which Bethea killed four guards, stole a bulldozer, and broke down a concrete wall to effect that escape from custody, as it would be were it describing an incident in which Bethea merely failed to arrive at a detention center to await his court hearing.[7] The indictment and the sentencing sheet, therefore, cannot "necessarily" show that Bethea engaged in the type of generally violent conduct contemplated by the ACCA. *See Shepard*, 544 U.S. at 24.

---

[6]Citations to J.A. __ refer to the Joint Appendix filed by the parties upon appeal.

[7]Because the indictment specifies that Bethea escaped while waiting to appear in court, we recognize that the most plausible explanation for his specific conduct is that he fled custody, rather than that he simply failed to report. Under *Shepard*, however, we are charged with considering whether Bethea's conduct was "necessarily" violent, not whether his conduct was plausibly or even likely so. 544 U.S. at 24. Bethea might have been released from custody for a finite period prior to his hearing. Had he been on such a furlough and then failed to return for his hearing, he would have escaped under South Carolina law. This possibility precludes a finding that Bethea necessarily left custody unlawfully.

It is true that were we to interpret the term "escape," as used in the indictment and sentencing sheet, in the way in which the word is commonly used, then we would likely have to conclude that Bethea unlawfully departed prison, and not that he merely failed to report. We have no basis for assuming, however, that South Carolina ascribes one meaning to escape when it is used in statutes and court opinions, but another entirely when used in charging documents and sentencing sheets. This is especially true in light of *Murray*, in which the indictment used the term "escape" to describe the defendant's failure to return to custody. 256 S.E.2d at 543. Consequently, we conclude that even after considering the relevant documents under the modified-categorical approach, Bethea's conviction for violating section 24-13-410 is not a violent felony under the ACCA.[8]

V.

Our holding that Bethea's prior escape conviction is not an ACCA predicate necessarily means that Bethea should not have been subjected to the ACCA's fifteen-year, mandatory-minimum provision. We therefore vacate his sentence and remand to the district court for proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[8]Bethea also urges this Court to apply the doctrine of constitutional avoidance to interpret the ACCA as requiring that predicate convictions be pled in an indictment and proved beyond a reasonable doubt. We do not reach this question because the offense at issue is not an ACCA predicate under these facts. And as Bethea notes, the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Almendarez-Torres v. United States*, 523 U.S. 224, 249 (1998), preclude this claim.